UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Christopher Palermo</u>

        v.                                    Civil No. 11-cv-557-JL

<u>Glenn Libby, Superintendent,</u>
<u>Grafton County House of</u>
<u>Corrections et al.</u>[1]


<u>**REPORT AND RECOMMENDATION**</u>


        Christopher Palermo filed this action, pursuant to 42

U.S.C. § 1983 and the Religious Land Use and Institutionalized

Persons Act, 42 U.S.C. § 2000cc-1(a) ("RLUIPA"), seeking damages

and injunctive relief, while he was incarcerated at the Grafton

County House of Corrections ("GCHC").  The matter is before this

magistrate judge for a preliminary review, pursuant to United

States District Court District of New Hampshire Local Rule

("LR") 4.3(d)(2) and 28 U.S.C. § 1915A(a).

_____

        [1]Palermo has named the following employees of the Grafton
County Department of Corrections as defendants in this action:
Supt. Glenn Libby, Capt. Roland Lafond, Lt. Kendall (first name
unknown ("FNU")), Corrections Officer ("C.O.") J. Belanger, C.O.
FNU Thurstin, Sgt. FNU Marshall, C.O. M. Deien, C.O. FNU Veaux,
Sgt. FNU Vanammy, Sgt. FNU Clark, Sgt. FNU Stanton, and John and
Jane Doe and John and Jane Roe defendants.

## Standard for Preliminary Review

Pursuant to LR 4.3(d)(2) and 28 U.S.C. § 1915A(a), the magistrate judge conducts a preliminary review of pro se in forma pauperis complaints before defendants have an opportunity to respond to the claims.  The magistrate judge may direct service of the complaint, or, as appropriate, recommend to the district judge that one or more claims be dismissed if: the court lacks subject matter jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim upon which relief may be granted, the allegation of poverty is untrue, or the action is frivolous or malicious.  See 28 U.S.C. § 1915A(b); LR 4.3(d)(2).

In determining whether a pro se complaint states a claim, the court must construe the complaint liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  To survive preliminary review, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010).  To determine plausibility, the court treats as true all well-pleaded factual allegations, and

construes all reasonable inferences drawn therefrom in the plaintiff's favor.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

**Discussion**

I.   Religious Practice Claims

Palermo asserts that his right to practice his religion was improperly infringed at the GCHC.  Inmates have a First Amendment right to exercise their religion in jail that may be restricted by prison officials only when such restriction is "reasonably related to legitimate penological interests."  See Beard v. Banks, 548 U.S. 521, 528 (2006) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).  RLUIPA, 42 U.S.C. § 2000cc-1(a), also prohibits prison officials' actions that place a substantial burden on an inmate's religious exercise, unless the action is the least restrictive means of furthering a compelling governmental interest.  See Bader v. Wrenn, 675 F.3d 95, 98 (1st Cir. 2012).  Accordingly, when an inmate asserts that his right to engage in religious exercise has been unreasonably abridged, his claim arises under both the Free Exercise Clause and RLUIPA.

The Fourteenth Amendment's Equal Protection Clause provides that no state shall "deny any person within its jurisdiction

equal protection of the law."  U.S. Const. amend. XIV.  A prison

inmate asserting that he has been treated differently than other

similarly situated inmates on the basis of his religious faith

may assert an equal protection claim.  See Kuperman v. Wrenn,

645 F.3d 69, 77-78 (1st Cir. 2011).

Palermo, who claims that he is a member of a pagan

religion,[2] asserts that the following incidents denied him the

right to practice his religion under the First Amendment,

RLUIPA, and the Equal Protection Clause:

- Upon Palermo's arrival at the GCHC, he notified Capt.
  Roland Lafond that he needed to be provided with a
  religious diet.  Lafond denied the request, telling
  Palermo that no religious diets were offered at the GCHC.

- On one occasion C.O. Thurstin observed Palermo engaging
  in a religious observance and told him to "stop that
  witchcraft" or face disciplinary action.  Palermo
  complained about this incident to other GCHC staff
  members, but was only instructed to do as he was told.

_____

[2]Courts and prisons have recognized paganism as a religion
entitled to protection under the First Amendment and RLUIPA.
See e.g., Rupe v. Cate, No. CV-08-2454-EFS, 2011 WL 4889211, at
*7 (E.D. Cal. Oct. 13, 2011) (recognizing that "Pagan religious
practices are religious exercise" under RLUIPA); Floyd v.
Leslie, No. 3:09 CV 378, 2009 WL 3060264, at *3 (N.D. Ind. Sept.
23, 2009) (Satanist inmate requesting access to his "Pagan
material," who was told by corrections official, "we don't allow
that here," stated a § 1983 claim for relief for a violation of
his right to practice his religion); Anderson v. Klug, No. 08-C-
0248, 2008 WL 1902023, at *2-3 (E.D. Wis. Apr. 25, 2008) (inmate
asserting that his pagan religious texts were arbitrarily
withheld and destroyed stated claim under First Amendment and
RLUIPA for violation of his right to practice his religion).

- Palermo requested religious reading materials and ritual items that he required in order to worship, as other religious faiths receive bibles and religious items from the GCHC.  Lafond denied his requests on the basis that Palermo's religion was "not even real," and told Palermo that the only two religions recognized at the GCHC were Christian and "Lafondian."

A.    Harassment and Threats, Per Se

The allegations against Thurstin and Lafond describing disrespectful and unprofessional comments (regarding his practices being "witchcraft" and "not real"), are insufficient to demonstrate that the comments actually caused Palermo to be deprived of the ability to practice his religion, or that the comments violated his right to equal protection of the laws. Derogatory language and threats alone have not been found to state a plausible claim for relief under § 1983.  See DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000) ("The use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution.  Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." (footnote and citations omitted)).  The court also finds that Palermo has not stated a claim against any officer who knew of and failed to intervene with Thurstin on Palermo's behalf, when Palermo complained about

Thurstin's comment.  Accordingly, the court should dismiss the claims based on Lafond's and Thurstin's comments.

B.   Reading Materials, Ritual Items, and Diet

Palermo asserts that his ability to practice his religion was abridged by Lafond, in that Lafond denied him access to religious reading materials, ritual items, and a religious diet. Furthermore, Palermo has asserted that adherents of other faiths were given religious reading materials and ritual items.  The record presently before the court does not provide any basis, at this stage of the proceedings, for the court to find that the restrictions placed on Palermo's religious diet, reading materials, and ritual items were reasonably related to any legitimate penological interest.  Accordingly, the complaint states the minimal facts necessary to state a claim for relief alleging that Lafond improperly denied Palermo the ability to engage in religious practices by denying him a religious diet, religious reading materials, and ritual items, and an actionable Equal Protection claim, alleging discrimination based on the failure to provide Lafond with religious reading materials and ritual items.

As to a religious diet, Lafond has specifically alleged that no religious diets are provided at GCHC.  Lafond has

therefore failed to allege that he was discriminated against on the basis of his religion, with respect to his diet. Accordingly, the court should dismiss the equal protection claim relating to Lafond's request for a religious diet.  In all other respects, Palermo's claims alleging violations of his rights under the Free Exercise Clause, RLUIPA, and the Equal Protection Clause may thus proceed.  The court directs service of these claims on Lafond in an order issued simultaneously with this report and recommendation ("the Simultaneous Order").

II.  <u>Medical and Dental Care</u>

    A.  <u>Prescription Medication</u>

Palermo alleges that he was denied constitutionally adequate medical care when he was not, upon his admission to the GCHC, provided with blood pressure medication he had previously been prescribed.  In order to state a constitutional claim for the denial of constitutionally adequate medical care, an inmate must allege that defendants have committed "acts or omissions . . . sufficiently harmful to evidence deliberate indifference to serious medical needs."  <u>Leavitt v. Corr. Med. Servs.</u><u>,</u> 645 F.3d 484, 497 (1st Cir.2011) (internal quotations and citation omitted).  A serious medical need is one that involves a substantial risk of serious harm to the prisoner if it is not

adequately treated, or if treatment is sufficiently delayed.
See id.

The plaintiff must also demonstrate that the defendant
acted with deliberate indifference in failing to provide
adequate care to address plaintiff's serious medical need. See
Farmer v. Brennan, 511 U.S. 825, 834 (1994). "Deliberate
indifference . . . may be shown by the denial of needed care as
punishment and by decisions about medical care made recklessly
with 'actual knowledge of impending harm, easily preventable.'"
Ruiz-Rosa v. Rullán, 485 F.3d 150, 156 (1st Cir. 2007) (quoting
Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993)).

Palermo asserts that he attempted to see the GCHC medical
department about his blood pressure medicine, but C.O.s Belanger
and Thurstin denied his request, stating: "If you pass out then
we'll call medical but not before that." Palermo does not
allege that he suffered any harm as a result of not getting his
medication.

While high blood pressure can be a serious medical
condition, Palermo has not alleged that the denial of the
medication put him at a substantial risk of serious harm. Even
if the court were to presume a risk of serious harm, Palermo has
not stated sufficient facts to demonstrate that Belanger and

Thurstin were aware of that risk and disregarded it.  Palermo
has thus failed to allege that the officers acted with
deliberate indifference, and Palermo's claim concerning his
prescription medication should be dismissed.

    B.   <u>Psychiatric Medication</u>

    Palermo alleges that inmates are charged money for
psychiatric medication at the GCHC, and are required to pay for
the medication out of their inmate accounts, or to repay the
GCHC after they are released.  Palermo alleges that that policy
violates the inmates' rights.  While jail officials may not deny
necessary medical treatment due to an inmate's lack of funds, or
condition such treatment upon an inmate's ability to pay, <u>see</u>
<u>Cannon v. Mason</u>, 340 F. App'x 495, 498 (10th Cir. 2009), if a
prisoner is able to pay for medical care, requiring such payment
is not deliberate indifference to serious medical needs.
Instead, such a policy requires only that a prisoner bear a
personal expense that he would have to bear outside of jail.

    Palermo does not allege that he was denied adequate medical
or psychiatric care because he was not able to pay for his
prescriptions.  He has thus failed to allege sufficient facts to
state a claim upon which relief might be granted arising out of

the GCHC's policy of charging inmates for medication.  The claim
should be dismissed.

    C.   <u>Toothpaste</u>

    Palermo alleges that he was provided with unhealthy
toothpaste at the GCHC.  Inmates are protected from
unconstitutional conditions of confinement that "from an
objective standpoint, . . . deny him the minimal measure of
necessities required for civilized living."  <u>Surprenant v.
Rivas</u>, 424 F.3d 5, 18 (1st Cir. 2005) (citing <u>Farmer</u>, 511 U.S.
at 834).[3]  The plaintiff must also demonstrate that "from a
subjective standpoint, the defendant was deliberately
indifferent to inmate health or safety."  <u>Surprenant</u>, 424 F. 3d
at 18-19 (citing <u>Farmer</u>, 511 U.S. at 836-37).

    In order to state a claim, Palermo must assert facts to
demonstrate that a responsible prison official was aware of a
significant risk of serious harm accruing from the deprivation
of toothpaste, and disregarded the risk in denying Palermo

---

[3]It is not clear whether Palermo was housed in the GCHC as a
pretrial inmate, in which case his right to humane conditions of
confinement arises under the Fourteenth Amendment, or housed in
the GCHC as a sentenced inmate protected by the Eighth
Amendment.  The court will construe the complaint to have
invoked the Fourteenth Amendment, which is at least as
protective of the plaintiff's right to humane conditions of
confinement as the Eighth Amendment.  <u>See</u> <u>Surprenant</u>, 424 F.3d
at 18.

toothpaste.  Palermo alleges that he complained to Lafond and

the "medical department" that the toothpaste they had provided

to him contained a harmful ingredient and was making him sick.

Lafond told Palermo not to use the toothpaste if he didn't like

it.  Palermo does not allege that he had any dental problems

that were caused or exacerbated by a lack of toothpaste.

Nothing in the complaint indicates that any defendant failed to

provide Palermo with toothpaste while being actually aware of a

risk of serious harm that could result from that failure.

Accordingly, Palermo has failed to state a claim arising out of

the denial of toothpaste, and the claim should be dismissed.

III. Strip Searches

Palermo asserts that he was subjected to unconstitutional

strip searches at the GCHC, in violation of his Fourth and

Fourteenth Amendment rights.  To determine the constitutionality

of such a search under the Fourth Amendment, the court considers

four factors: 1) the scope of the intrusion; 2) the manner in

which the search was conducted; 3) the justification for the

search; and 4) where the search was conducted.  See Bell v.

Wolfish, 441 U.S. 520, 559 (1979).

As to the first factor, Palermo does not describe the scope

of the search except to call it "unclothed."  The court will

presume, therefore, that Palermo was required to entirely undress for visual inspection by GCHC staff.  As to the second factor, Palermo does not describe the specific manner in which the search was conducted, but states that it was executed four times per day in a manner that caused him embarrassment and humiliation each time.  Palermo further states that the searches were conducted "as part of the punishment," and under threat of a painful physical punishment for noncompliance, as Capt. Lafond would direct staff to punish inmates who questioned the search policy by pepper-spraying them in the groin.  As to the third factor, Palermo states that there was no particularized justification for the searches but that they were conducted pursuant to a policy.  As to the fourth factor, Palermo alleges the searches were not conducted in private, but occurred in a location where Palermo was in view of other inmates and staff, including female staff.

While the court does not doubt that searches are necessary in the jail context in order to maintain prison security, see id., being strip-searched four times a day, in front of other inmates and female jail personnel, and under threat of violence, states sufficient facts to assert a plausible claim that Palermo was subjected to unreasonable searches under the Fourth

Amendment, and unreasonable punishment as a pretrial detainee under the Fourteenth Amendment.  Palermo has not, however, stated which individual officers actually conducted the challenged searches of Palermo, and precisely what they did that violated Palermo's rights.  Palermo states that Lafond, as a supervisor, took specific actions to enforce the policy. Accordingly, Palermo has stated the minimum facts necessary to assert plausible Fourth and Fourteenth Amendment claims against Lafond in his supervisory capacity.  See Marrero-Rodríguez v. Municipality of San Juan, 677 F.3d 497, 502 (1st Cir. 2012) (authorizing supervisory liability claim to proceed under § 1983 where absentee supervisor had direct responsibility for, and was involved in structuring of, illegal training exercises). Accordingly, the court directs service of the Fourth and Fourteenth Amendment strip search claims against Lafond in the order issued on this date.

IV.  Law Library

     Palermo asserts that he was denied meaningful access to the courts because he was denied adequate access to the law library. To state such a claim, plaintiff must demonstrate that the legal resources available to him were inadequate to meet his need to conduct legal research, and that his legal status was harmed by

the deprivation of adequate legal materials.  See Lewis v.
Casey, 518 U.S. 343, 351 (1996).

Palermo alleges that he requested access to the law
library, and that Lafond denied his request.  Palermo states no
facts, however, indicating that his legal status was harmed in
any manner by the denial of access to the law library.
Accordingly, the claim should be dismissed.

V.   Retaliation

Palermo asserts that Lafond retaliated against him for
engaging in prison condition litigation.  The First Amendment
shields prisoners from retaliation in response to their engaging
in protected speech.  Ortiz v. Jordan, 131 S. Ct. 884, 893
(2011) (citing Crawford-El v. Britton, 523 U.S. 574, 592
(1998)).  To state a claim for retaliation for exercising his
First Amendment rights, Palermo must allege: (1) the conduct
which led to the alleged retaliation was protected by the First
Amendment; (2) some adverse action at the hands of the prison
officials; and (3) a causal link between the exercise of his
First Amendment rights and the adverse action taken.  See Hannon
v. Beard, 645 F.3d 45, 48 (1st Cir. 2011), cert. denied, 132 S.
Ct. 1105 (2012).

To satisfy the second element of a retaliation claim, Podkulski must show that defendants took an adverse action against him. <u>De minimis</u> reactions to protected speech will not satisfy that requirement. See <u>Pope v. Bernard</u>, ___ F. App'x ___, No. 10-1443, 2011 WL 478055, at *2 (1st Cir. Feb. 10, 2011), <u>cert. denied</u>, 132 S. Ct. 261 (2011). A defendant's reaction to protected speech is not <u>de minimis</u>, however, if defendant's conduct would deter an individual of ordinary firmness from exercising his or her First Amendment rights. <u>See</u> <u>id.</u>

Here, Palermo alleges that when Lafond equated Palermo's desire for access to the law library with Palermo's intention to file a suit against him, Lafond responded by having Palermo moved to an overcrowded tier, and that Lafond told Palermo that if he sued Lafond, "it will get worse." Although Palermo alleges that Lafond had him transferred to a possibly less comfortable housing situation, in response to the exercise of his First Amendment rights, Palermo has failed to demonstrate that the adverse impact to him of the transfer was not "de minimis." Palermo has failed to state facts to indicate that either the conditions of the overcrowded unit were so dangerous or restrictive that the transfer, or the vague threat that

things could get worse, was sufficient to deter an inmate of
ordinary firmness from engaging in an exercise of his First
Amendment rights.  See Lamb v. Crites, No. C-11-027, 2012 WL
130371, at *10 (S.D. Tex. Jan. 14, 2012) ("mere experience of
discomfort for a limited amount of time [is] not sufficient to
establish a retaliatory adverse act" (citing Morris v. Powell,
449 F.3d 682, 687 (5th Cir. 2006)).  The retaliation claim here
should be dismissed for failing to show that the transfer
resulted in more than temporary discomfort, and for failing to
show that the vague threat of worse treatment would likely deter
an inmate of ordinary firmness from exercising his rights.

## VI.   Supervisory Liability

Palermo states that Supt. Libby is a proper defendant to
each claim in this action because it is his responsibility to
supervise and oversee the operation of the facility.  Respondeat
superior does not provide a basis for supervisory liability in a
§ 1983 action.  Instead, a supervisor's liability must be based
on the supervisor's own acts or omissions constituting
"'supervisory encouragement, condonation or acquiescence[,] or
gross negligence of the supervisor amounting to deliberate
indifference.'"  Grajales v. P.R. Ports Auth., 682 F.3d 40, 47
(1st Cir. 2012) (citation omitted).  Palermo has not stated that

16

Libby himself took, or failed to take, any action in violation of Palermo's rights, or that he was even aware of the violations alleged.  Accordingly, Palermo has failed to state any § 1983 claim against Libby upon which relief might be granted.

The First Circuit has not addressed whether RLUIPA places a similar limitation on claims asserting a supervisor's liability for his subordinate's conduct.  At least one district court, in the Tenth Circuit, has barred recovery under RLUIPA by analogizing the statute to § 1983.  See Ciempa v. Jones, 745 F. Supp. 2d 1171, 1200 (N.D. Okla. 2010) ("An otherwise non-culpable person cannot be held liable for his subordinate's violation of RLUIPA merely because of his or her status as a supervisor.").  A district court in a different circuit, however, has found that a claim of negligent supervision is actionable under RLUIPA.  See Agrawal v. Briley, No. 02 C 6807, 2004 WL 1977581, *14 (N.D. Ill. Aug. 25, 2004).  Here, Palermo has made no allegation concerning an act or failure to act by Supt. Libby that caused or failed to prevent any of the violations alleged in the cognizable religious exercise claims.  Because the facts asserted by Palermo fail to show any causal nexus between the superintendent and the chaplain's decision, the Agrawal decision is distinguishable.  Accordingly, the

court, following the court's reasoning in <u>Ciempa</u>, recommends that Palermo's RLUIPA claims against Supt. Libby be dismissed.

VII. <u>Individual and Official Capacity Claims</u>

Palermo brings his claims against each defendant in both their individual and official capacities.  Individual liability is based on the defendant's own acts or failures to act.  <u>See</u> <u>Leavitt</u>, 645 F.3d at 502.  "'[A] damages suit against an official in an official capacity is tantamount to a suit against the entity of which the official is an agent.'"  <u>Id.</u> (citation omitted).  In this case, therefore, Palermo's official capacity claims against Capt. Lafond are essentially claims asserted against Grafton County, and may only proceed to the extent that a claim for damages may be asserted against a municipality, such as Grafton County.

A.   <u>Section 1983</u>

Under section 1983, a municipality's liability obtains only when it is the execution of a municipal government's policy or custom that inflicts the injury alleged.  <u>See</u> <u>Monell v. Dep't of</u> <u>Soc. Servs.</u>, 436 U.S. 658, 691 (1978).  Palermo has alleged that the challenged strip searches and the failure to recognize and accommodate his religious practices were the result of County

18

custom or policy, and of Lafond's acts or failures to act when
he had a duty to do so.  Accordingly, Palermo's individual and
official capacity claims against Lafond, regarding the religious
exercise and strip search claims, may proceed.

      B.    <u>RLUIPA</u>

      RLUIPA allows for a claim for "appropriate relief" against
a government, which is defined to include a "county."  <u>See</u> 42
U.S.C. §§ 2000cc-2 and 2000-cc-5(4)(A).  At this preliminary
stage of the case, in the absence of pertinent briefing from the
parties, the court declines to rule on whether claims for
damages may be asserted against an individual or county under
RLUIPA.  <u>See</u> <u>Kuperman</u>, 645 F.3d at 79 (declining to resolve
whether personal capacity claims are unavailable under RLUIPA
because defendants failed to brief issue).  Accordingly, the
court directs service of the individual and official capacity
RLUIPA claims for damages in this action, and awaits further
briefing on the issue before making a recommendation on that
issue in this case.

VIII. <u>Injunctive Relief</u>

      Palermo is presently incarcerated at the New Hampshire
State Prison, and he has not alleged any facts suggesting a

likely transfer back to the GCHC.  Accordingly, his claims for injunctive relief against the GCHC defendants are moot and should be dismissed.

### Conclusion

For the reasons stated in this report and recommendation, the court has directed, in the Simultaneous Order, that GCHC Capt. Lafond, in both his official and individual capacity, be served with the claims for damages, asserting violations of the First Amendment Free Exercise Clause, Fourteenth Amendment Equal Protection Clause, and RLUIPA, with respect to Palermo's right to practice his religion, and the claims for damages, alleging improper strip searches under the Fourth and Fourteenth Amendments.  All of the other claims and defendants identified in the complaint, and Palermo's requests for injunctive relief, should be dismissed.

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch.

<u>Union No. 37 v. United Nat'l Ins. Co.</u>, 617 F.3d 554, 564 (1st

Cir. 2010) (only issues fairly raised by objections to

magistrate judge's report are subject to review by district

court; issues not preserved by such objection are precluded on

appeal).

_____

Landya McCafferty

United States Magistrate Judge

September 12, 2012

cc:  Christopher Palermo, pro se

LBM:jba